BROADWAY-MAIN STREET BRIDGE DISTRICT *v.* MORTGAGE LOAN & INSURANCE AGENCY, INC.

4-4896

Opinion delivered January 17, 1938.

*Trieber & Pope,* for appellant.

*Wallace Townsend,* for appellee.

GRIFFIN SMITH, C. J. Mortgage Loan and Insurance Agency, Inc., is the owner in trust of lots 11 and 12 in block 71 of the city of Little Rock, having acquired such property by purchase on April 24, 1936. On August 28, 1936, these lots were sold by Broadway-Main Street Bridge District of Pulaski county to satisfy a lien for special assessments, costs, etc., due for delinquencies of 1933, 1934, and 1935.

This appeal questions correctness of the action of the chancery court in overruling in part and in sustaining in part a demurrer of the bridge district to a complaint filed by the Mortgage Loan and Insurance Agency. For convenience the latter will be referred to as the agency, and the bridge district will be referred to as the district.

The district was created by act 49 of the General Assembly of 1919, amended by act 24 of the extraordinary session of 1920. In pursuance of authority given by the two acts, assessments of benefits against property em-

braced within the district were made in 1920, and in 1921 $2,250,000 of bonds were sold. The assessed benefits were. pledged to secure payment of the bonds and interest, which matured and will mature serially from 1922 to 1950. At the time this suit against the district was filed, unpaid principal of the bonds amounted to $1,472,000. Annual payments of principal and interest were approximately $157,000.

In 1925 there was a general reassessment of all of the property within the district, but none has been made since that time.

The agency's complaint recites that it now has assessed benefits in defendant's district of $4,879.18 on the lots, being $2,183.34 on lot 11, and $2,695.84 on lot 12. It is then alleged that lot 11 was originally assessed at $30,500 ($17,500 for land, and $13,000 for improvements), and that lot 12 was assessed at $44,000 ($25,000 for land and $19,000 for improvements). Around January 1, 1930, fire completely destroyed the improvements on lot 11 and badly damaged the improvements on lot 12, and in April of the same year the county assessor revised assessments by eliminating the item of $13,000 representing improvements on lot 11, and reducing by $14,000 the item of $19,000 representing improvements on lot 12. These reductions amounted to $27,000, leaving only $47,500 of the original assessment of $74,500. It is shown that the annual assessment of benefits had been 6 per cent., except for 1931, when it was 2.40 per cent. The agency alleges that by reason of destruction and impairment of the improvements, it is entitled to an adjustment of the assessed benefits, and that such reductions should be based upon reassessment figures employed by the county assessor. There was a prayer for credit of $795.50 representing excess charges collected for 1930, 1931, and 1932, and for the delinquent years, 1933, 1934, and 1935; also, that a mandatory order be issued reducing by $1,791.68 the assessed benefits, which are payable in annual installments during the remaining life of the bonds.

The district demurred to the complaint on the ground (1) that the court was without jurisdiction, and (2) on the ground that the complaint did not state a cause of action. Other grounds upon which the demurrer was predicated were that the complaint did not state facts sufficient to entitle the plaintiff (3) to retroactive relief; (4) to relief in respect to assessments paid for 1930, 1931, and 1932; (5) to relief in respect to assessments paid for 1933, 1934, and 1935; (6) to relief in respect to assessments for 1936 and 1937.

The court overruled the first and second grounds set out in the demurrer; sustained the third, and declined to pass upon the fourth, fifth, and sixth assignments. The district excepted to the court's action in overruling assignments Nos. 1 and 2, and was granted an appeal. The agency excepted to the court's action in sustaining assignment No. 3, and was granted a cross-appeal.

The district, therefore, urges that the court was without jurisdiction, and that the complaint did not state facts sufficient to constitute a cause of action, and the agency's cross-appeal urges that it was error to deny retroactive relief.

It seems to have been conceded that if authority to correct assessments exists, such authority must be found in the act creating the district, or in some supplemental or amendatory act passed prior to the time the bonds were sold. With creation of the district and sale of the bonds, owners of the securities acquired a vested interest in the assessments. In the absence of some provision in the trust agreement authorizing the district to vary the statutory provisions, interest of bondholders in the assessments could not be impaired without consent of all of them. We must, therefore, look to acts 49 of 1919 and 24 of the special session of 1920, and determine whether the language used is susceptible of the construction contended for by the agency.

That part of act 49 which it is sought to invoke in support of the objectives of the complaint reads as follows:

"The board may order an annual adjustment or re-assessment of the benefits to be made by the assessors, to be made, advertised and equalized as in the case of the original assessment; but in no case shall the total amount of the assessment be increased or diminished more than one per cent."

Appellant district argues that power conferred upon the board to "order an annual adjustment of assessments of the benefits" authorizes a general reassessment of all the tracts within the district, "lowering the assessments as to some, and correspondingly raising them as to others." Appellee and cross-appellant agency relies upon the word "adjustment" followed by the alternative "or," and urges that some value and meaning must be given to the word "adjustment," which, it is alleged, appears in the statutes under which the district was created, but does not appear in others.

In *Earle Road Improvement District No. 6* v. *Johnson,* 145 Ark. 438, 224 S. W. 965, in considering the distinction between an adjustment of assessments and a reassessment, it was held, in effect, that an adjustment is a correction of inequalities in the original assessment of the various lands, while a reassessment is a new determination of the benefits.

If it should be conceded that, inferentially, the term "adjustment" as it appears in the legislative act was intended as a grant of authority to the board to annually consider inequalities occasioned by casualties occurring subsequent to the time original assessments became fixed, such intent is coupled with a requirement that adjustments or reassessments of benefits "be made, advertised and equalized as in the case of the original assessment." The original assessments were made and equalized with respect to the entire district. Within a timely period aggrieved property owners had a right to make protests. But when the assessments became final, rights of individual property owners to complain were at an end. Thereafter, the board, at its discretion, may order an annual "adjustment or reassessment of benefits to be made by the assessors." It seems clear that this

is a discretion vested in the board. Certainly, in the absence of a showing that the discretion was abused, a court of equity acquired no jurisdiction.

The demurrer questioned jurisdiction of the court as to the subject of the action, in the light of the allegations of the complaint. For the error in overruling the demurrer, the decree is reversed, with directions to dismiss the complaint.

MEHAFFY, J., dissents.