HOLTHOFF *v.* STATE BANK & TRUST COMPANY OF WELLSTON, Mo.; JOHNSON *v.* KERSH LAKE DRAINAGE DISTRICT; FISH *v.* KERSH LAKE DRAINAGE DISTRICT.

4-7253—4-7380—4-7585                    186 S. W. 2d 162

Opinion delivered March 19, 1945.

308

*Coleman, Mann, McCulloch & Goodwin,* for appellants.

*Rowell, Rowell & Dickey; Rose, Loughborough, Dobyns & House; Robert A. Zebold* and *A. F. House,* for appellees.

McFADDIN, J. All of these appeals are from the Lincoln chancery court, and involve the Kersh Lake Drainage District. The transcripts in the three cases contain 977 typewritten pages, and the briefs contain 1,015 printed pages.

Case No. 7380 is A. J. Johnson *et al.* v. Kersh Lake Drainage District, and is hereinafter referred to as the "Johnson Case." It is before this court now on the third appeal. The first appeal is in 198 Ark. 743, 131 S. W. 2d 620, 132 S. W. 2d 658; affirmed by the United States Supreme Court, 309 U. S. 485, 60 S. Ct. 640, 84 L. Ed. 881, 128 A. L. R. 386. The second appeal is in 203 Ark. 315, 157 S. W. 2d 39; certiorari denied by the United States Supreme Court, 316 U. S. 673, 62 S. Ct. 1044, 86 L. Ed. 1748.

Case No. 7253 is C. H. Holthoff *et al.* v. State Bank & Trust Co. of Wellston, Missouri; it is referred to herein as the "Holthoff Case." It is before us now on the second appeal. For the first appeal, see 203 Ark. 315, 157 S. W. 2d 39; certiorari denied by the United States Supreme Court, 316 U. S. 673, 62 S. Ct. 1044, 86 L. Ed. 1748.

Case No. 7585 is W. A. Fish *et al.* v. Kersh Lake Drainage District and State Bank & Trust Co., and is referred to herein as the "Fish Case." It is before us on its first appeal. Distinction is made between the "Fish Case" and the "Fish Decree," because the "Fish Decree" was rendered on June 15, 1932, and has been an issue in each of the previous appeals in each of these cases.

Also, certain angles of these cases were in the federal court. See *Kersh Lake Drainage District* v. *State Bank & Trust Co.* (8th C.C.A.), 85 Fed. 2d 643, and *Kersh Lake Drainage District* v. *State Bank & Trust Co.* (8th C.C.A.), 92 Fed. 2d 783.

Even though the three cases now before us have never been consolidated by formal order, still they were argued together in this court, and the consideration of two of the cases was delayed until the third was ready for submission. Each of these three cases involves the affairs of the Kersh Lake Drainage District, and stems from either the efforts of some landowners to escape further payments, or the efforts of certificate holders to secure full collection. Because the cases are thus intertwined, we

consider the three present appeals, and dispose of them in one opinion. Authority for this procedure may be found in 3 Am. Juris. 342, where, in discussing consolidation of actions on appeal, the rule is stated:

"Of course, the courts of review may, and frequently do, without consolidating cases, hear and determine two or more of them together for reasons of convenience or because of the similarity of the facts or questions involved, or because they grew out of the same controversy or relate to the same subject of litigation, or because the decision of one case will, or may, determine the disposition of the other."

Without stating the facts or holdings on the former appeals in the Johnson case and the Holthoff case, we begin with our opinion of December 8, 1941, reported in 203 Ark. 315, 157 S. W. 2d 39. There, this court used one opinion to dispose of both cases, *i.e.,* second appeal in the Johnson case and first appeal in the Holthoff case. A petition for rehearing was filed in which it was urged, *inter alia,* that the court had used the facts in one case to support the opinion in the other case and had thus committed error. This petition for rehearing was denied. After the United States Supreme Court refused certiorari (April 27, 1942), 316 U. S. 673, 62 S. Ct. 1044, 86 L. Ed. 1748, the clerk of the Arkansas Supreme Court prepared a joint mandate to the Lincoln chancery court on authority of the opinion of this court on the second Johnson appeal and first Holthoff appeal. This joint mandate was resisted by the attorneys for the present appellants; and among other grounds for resisting the joint mandate there was the same claim, as made in the petition for rehearing, that the court had indiscriminately used facts from separate records. This court sustained the action of the clerk in issuing the joint mandate.

When the cases went back to the Lincoln chancery court on the joint mandate the following transpired in each of the cases, and leads to the present appeals:

(A) In the Holthoff case there was:

1. A decree of June 6, 1943, entered on the mandate, setting aside the decree of March 21, 1941, and also setting aside the decree of June 15, 1932, in the case of Fish *et al.* v. Holthoff (this last was the "Fish Decree").

2. Answer and cross-complaint of Holthoff *et al.* v. the Bank, *et al.;* and also a bill of review by Holthoff, *et al.*

3. Answer of the Bank, *et al.,* and motion to dismiss the matters in 2, above.

4. A hearing on a voluminous record, and a decree by the Lincoln chancery court on July 12, 1943, in which the court found all the issues of law and fact in favor of the plaintiffs (State Bank, *et al.*). From that decree comes this appeal, presenting, *inter alia,* these contentions raised by the appellants:

I. The supreme court was in error in its opinion of December 8, 1941, in setting aside the "Fish Decree" against the 54 landowners not named in the complaint filed by the bank against Holthoff, *et al.*

II. The State Bank & Trust Co. of Wellston, Mo., committed a fraud on the federal court when the bank obtained a judgment against Kersh Lake Drainage District, and therefore this court of equity should refuse any relief to the State Bank.

(B) In the Johnson case there was:

1. A decree entered on June 8, 1942, on the mandate setting aside the decree of July 11, 1940, and restoring the cause to the docket.

2. The 58 defendants (Fish *et al.*) filed an answer to which there was a response.

3. There was a trial upon a voluminous record; and the learned chancellor rendered a ten-page opinion which is in the record and has proved helpful to this court.

4. A decree was rendered on September 15, 1943, in which the chancery court held that the Kersh Lake Drainage District should have foreclosure of its lien on

the lands of the 58 defendants for the delinquent and unpaid assessments—being those assessments sustained in the second appeal. From that decree comes this appeal presenting, *inter alia*, the following contentions of the appellants:

III. In the second appeal in the Johnson case the Supreme Court traveled outside the record in that case when it held the "Fish Decree" to be void.

IV. A special levy by the Jefferson circuit court is necessary before interest can be collected on the assessed benefits.

V. Act 467, § 1, of 1919, allowing interest to be charged on assessed benefits, was repealed by Act 285 of 1941.

(C) We turn now to the case of W. A. Fish, *et al.*, v. Kersh Lake Drainage District, which is here on appeal for the first time. It will be recalled that Fish *et al.* filed suit against the Kersh Lake Drainage District and obtained a decree on June 15, 1932, exempting the lands of the 58 landowners from further payments of benefit and interest. This decree is called the "Fish Decree." When the Lincoln chancery court rendered its decree in the Holthoff case on June 8, 1942, it set aside the "Fish Decree." Thereafter on May 4, 1944, Fish *et al.* (58 parties) filed a complaint against the Kersh Lake Drainage District and the State Bank & Trust Co. of Wellston, Missouri, to set aside the decree of July 12, 1943, in the Holthoff case (and also the decree of September 15, 1943, in the Johnson case), as having been obtained by fraud. This was a proceeding under § 8246 of Pope's Digest; and its purpose was to leave open for the 58 parties all the defenses they might be able to offer in the suit of the Kersh Lake Drainage District to foreclose the delinquent and unpaid assessments, *i.e.*, those involved in the second Johnson case. The said complaint of May 4, 1944, contained no defenses to the foreclosure suit other than those contentions already listed as issues in these appeals. Since a proceeding under § 8246 of Pope's Digest must not only allege the unavoidable casualty which

caused the judgment to be entered, and sought to be set aside, but must also allege the grounds of defense to the original suit; and since no new grounds of defense were alleged in the complaint of May 4, 1944, other than those heretofore referred to as contentions in the Johnson appeal and the Holthoff appeal: it seems to us that a decision of these contentions will give the appellants the full benefits of a trial on the merits.

With this statement, we proceed now to discuss the five main contentions of the appellants, as we have previously listed them.

I. *The Appellants Contend that This Court was in Error in its Opinion of December 8, 1941, in Setting Aside the "Fish Decree" Against the Fifty-four Landowners not Named in the Complaint Filed by the Bank Against Holthoff, et al.* This contention is amplified by the further contentions:

(a) that the fifty-four landowners were not named in the suit; and

(b) that there was no allegation of fraud committed by any of these individuals.

It will be recalled that there were 58 parties who secured the "Fish Decree" on June 15, 1932, which exempted the lands of each of the 58 from further charges of any kind. The effect of that decree was to release thousands of acres from further liability. The State Bank & Trust Co. brought its first suit (the first Holthoff case) against four of these 58, seeking to set aside the "Fish Decree." This court in its opinion of December 8, 1941, set aside the "Fish Decree," saying in concluding: "The decree will be reversed and the cause remanded with directions to vacate, annul and set aside said Fish decree. . . ."

Now, the appellants contend that the "Fish Decree" should be set aside only as to the four who were sued by the bank in the first Holthoff case, and not as to all the remaining 54. But the conclusive answer to this contention of the appellants is that the first Holthoff case was

a class suit, as also was the case in which the "Fish Decree" was rendered.

In the original complaint filed by the State Bank in the first Holthoff case on September 24, 1940, and in the answer filed by the defendants on October 21, 1940, in the first Holthoff case, the case was styled:

"State Bank & Trust Co. of Wellston, Mo., W. C. Hudson, Joel Garner, and Lillian Iddings...Plaintiffs,

v.

C. H. Holthoff, T. H. Free, Emmett Warren, Clyde E. Fish, and W. A. Fish, all of whom are sued individually and as representatives of the class of landowners whose lands were benefited by the decree rendered in the suit of W. A. Fish *et al.* v. C. A. Holthoff *et al.* under date of June 15, 1932 ............................................................................Defendants."

The said complaint of September 24, 1940, alleged "the persons who profited by the said decree are numerous and it is impracticable to bring all of them before this court, the plaintiffs sue the persons designated as defendants herein individually and as representatives of the class who profited by the terms of said decree." And, again, the same complaint alleged "On June 8, 1932, the defendants, Clyde E. Fish and W. A. Fish, for themselves and other taxpayers similarly situated filed their complaint in this court against Kersh Lake Drainage District, C. H. Holthoff, Emmett Warren, and T. H. Free, as Commissioners."

This last copied allegation as contained in the complaint filed in the first Holthoff case on September 24, 1940, is amply borne out by an examination of the complaint which initiated the cause resulting in the "Fish Decree" of June 15, 1932. That last-mentioned complaint styles the parties:

"Clyde E. Fish and W. A. Fish for themselves and for all other taxpayers and owners of land within Kersh Lake Drainage District similarly situated, that this suit is brought in the names of

the parties mentioned for the purpose and benefit of all other taxpayers in said district......Plaintiffs,

v.

Kersh Lake Drainage District and C. H. Holthoff, Emmett Warren, and T. H. Free, Commissioners .................................................................................Defendants.''

Thus, the parties in the very initiation of the proceedings that resulted in the "Fish Decree," and also in answering the first Holthoff case, listed themselves as being engaged in a class suit. We agree that they were so engaged in a class suit, and therefore the opinion of this court of December 8, 1941, was rendered in a class suit, in which four members of the class represented the other 54 members, and the other 54 members of the class are bound by that opinion.

The term "class suit" is an application of the doctrine of virtual representation as recognized in § 1314 of Pope's Digest, and as applied in *Conner v. Heaton,* 205 Ark. 269, 168 S. W. 2d 399. See *Conner v. Thornton,* 207 Ark. 1113, 184 S. W. 2d 589, decided by this court January 8, 1945. See, also, 47 C. J. pp. 40 to 52; and 21 C. J. pp. 284 to 296; and 39 Am. Juris., pp. 917 to 928; and 30 Am. Juris, p. 962. Those who filed the first Fish suit as representatives of a class, and those who defended the first Holthoff suit defended it as representatives of a class. The prosecution in the first instance and the defense in the second instance was each *bona fide* for the entire class and with all diligence; so the entire class is bound by the final result. The rule is thus stated in 39 Am. Juris. 919:

"In such a case a judgment in favor of the parties representing the general class is operative under the doctrine of *res judicata* in favor of all who are thus represented, and a judgment against those parties is operative also against those represented."

So we hold that all 58 of the landowners are bound by the opinion of this court of December 8, 1941.

II. *The Appellants Contend that the State Bank & Trust Company of Wellston, Mo., Committed a Fraud on*

*the Federal Court when the Bank Obtained a Judgment
Against Kersh Lake Drainage District; and Therefore
this Court of Equity Should Refuse any Relief to the
Said Bank.* The bank obtained judgment against the
Kersh Lake Drainage District in the U. S. District Court
for $46,500 of certificates together with interest; and
making a total of $54,655. This judgment was rendered
on November 1, 1935, and was affirmed by the Eighth
Circuit Court of Appeals on August 27, 1936, in the case
of *Kersh Lake Drainage District* v. *State Bank & Trust
Co.,* 85 Fed. 2d 643. The appellants attempted to show
in the Lincoln chancery court, at the hearings in June,
1943, in this present Holthoff case, that the said judgment
obtained in the said federal court in 1935 was obtained by
a fraud practiced by the bank on the federal court; and
that the fraud consisted in the fact that the said bank
never held in its own right more than $24,500 of the cer-
tificates of indebtedness of the said district; and that
there was a fraudulent joinder in the federal court where-
by residents of Arkansas fictitiously transferred the cer-
tificates held by them to the State Bank to give diversity
of citizenship. One effective answer to his contention of
the appellants is that it should have been addressed to the
federal court which rendered the judgment and which
could easily inquire into any fraud practiced on that
court.

But there is another answer; and it is found in the
case of *Bullard* v. *Cisco,* 290 U. S. 179, 54 S. Ct. 177, 78 L.
Ed. 254, in which the United States Supreme Court held
that bonds could be transferred to a nonresident under a
protective committee arrangement, so as to give the non-
resident the right to proceed in the federal court. It was
shown in the evidence in the case pending in the federal
court brought by the State Bank against the Kersh dis-
trict that the transfer of the certificates to the State Bank
was done under an instrument drawn to comply with the
rule of *Bullard* v. *Cisco.* Thus the United States District
Court, when it rendered the judgment in favor of the
State Bank against the Kersh district in 1935, was cog-
nizant of the assignments. We, therefore, cannot say that

any fraud was committed on the federal court, and we hold against the second contention of the appellants.

III. *The Appellants Contend that in the Second Appeal in the Johnson Case the Supreme Court Traveled Outside the Record When It Held the Fish Decree to be Void.* This contention is an attack on the opinion of this court rendered on December 8, 1941. In effect, the appellants are asking us to reopen that opinion and review it. There are several reasons why we must hold against appellants on this contention, but for brevity we give only one reason: Every argument that the appellants now make in this contention was made by them either in the petition for rehearing overruled on January 12, 1942, or in the motion to recall mandate, which motion was denied on June 8, 1942. We have previously referred to these matters in the statement of facts herein.

The arguments now made by the appellants were made to the court composed of the judges who made the opinion of December 8, 1941, and the arguments were overruled. The opinion of December 8, 1941, thus became the law of the case, and is ruling on this court on this subsequent appeal.

The doctrine of "law of the case" is stated in 3 Am. Juris. 541: "that a court of review is precluded from agitating questions which were propounded, considered, and decided on previous review." In *Stuart C. Irby Co.* v. *Smith,* 205 Ark. 183, 168 S. W. 2d 618, we said:

"For a hundred years this court has held that where the record on the second appeal is substantially the same as on the first appeal, the holding of this court on the first appeal becomes the law of the case, and binding on the second appeal. Beginning with the case of *Fortenberry* v. *Frazier et al.,* 5 Ark. 200, 39 Am. Dec. 373 (decided in 1843) and continuing down to the present time, this court has uniformly followed this rule."

The doctrine of "law of the case" shows its salutary effects in just such a situation as is here presented. Since the opinion of December 8, 1941, there has been a change in the personnel of this court, in that three of the judges

who made that opinion have retired, and three others have come to the court. It would materially contribute to the instability of judicial precedents if, on a subsequent appeal, the court was free to reopen the case decided on the previous appeal. So we reject the appellants' third contention.

IV. *Appellants Contend that a Special Levy by the Jefferson Circuit Court is Necessary Before any Interest can be Collected on the Assessed Benefits.* Of this contention appellants say:

"If appellants' lands are liable for a tax on interest on benefits, under Act 467 of 1919, the tax is not payable until the circuit court of Jefferson county computes the interest, and levies a tax thereon, payable in annual installments, as provided by the act.

"This is the decisive proposition involved on this appeal. If it is sustained, all other questions will pass out of the case.

"The present suit is to collect alleged delinquent taxes on interest on benefits on lands belonging to appellants. The defense is that no tax has been levied on interest on benefits in the Kersh Lake district, and therefore no taxes on interest on benefits on appellants' lands are delinquent, and the present suit is premature."

We hold that Act 467 of 1919 provided that benefits would bear interest, and that *after* the effective date of that act the Jefferson circuit court entered a judgment which allowed the benefits to be collected until all the certificates of indebtedness of the district had been paid; and that the said judgment of the Jefferson circuit court of June 27, 1919, dispenses with the necessity of any further levy. To elucidate this holding: Act 467 of 1919 was approved and became effective on March 28, 1919, and provided:

"Where assessments of benefits have been made in drainage districts organized either under general or special acts, the property owner shall have the right to pay such assessments in full within sixty days *after the pass-*

*age of this Act,* but if he does not avail himself of this privilege, the assessment of benefits shall bear interest at the rate of six (6%) per cent. per annum, and shall be payable only in installments as levied. The interest need not be computed until necessary to be sure that the collections have not exceeded the total amount of benefits and interest; or the interest may be first collected.''

Thereafter, and on June 27, 1919, the commissioners of Kersh Lake Drainage District reported to the Jefferson circuit court that the cost of the improvement would be $181,500 represented by a schedule of certificates maturing as set out in the report. The commissioners prayed that annual levy of taxes be made of six per cent. of the assessed benefits; ''the same to continue if necessary until the entire indebtedness of the district has been paid, said collections to be applied in the first instance to the interest accruing on said assessment of benefits.'' On that report and prayer, and on the same day, the Jefferson circuit court ordered:

''. . . that the prayer of said petition be granted, and that there be levied and collected between the first Monday of January and the tenth day of April of each of the years 1920 to 1934, inclusive, and until the entire indebtedness aforesaid is paid in full, 6½ per cent. of the benefits which have been assessed against the real property in the district by reason of the improvements; . . .''

Thus it is clear that after the Arkansas Legislature provided that assessed benefits ''shall bear interest,'' the Jefferson circuit court entered its judgment that the benefits would be collected at the rate of 6½ per cent. per annum until the indebtedness and interest be paid in full, and not until the benefits alone were paid. We therefore reject appellants' fourth contention.

V. *The Appellants Contend that Act 467 of 1919 was Repealed by Act 285, 1941.* This Act 285 of 1941 amended Act 467 of 1919 (as previously copied herein) in only two particulars:

(1) Words 34 to 39 in the first sentence of the 1919 Act said "after the passage of this Act." These words were changed in the 1941 Act to read "after the formation of the district."

(2) The 1941 Act added this proviso to the words that concluded the 1919 Act: "provided that this Act shall not apply to districts heretofore organized in which interest on bonds or other borrowed money was calculated as a part of the cost of construction and included in the assessment of benefits."

Appellants claim that under this proviso as above quoted, interest could not be collected on the assessed benefits of the Kersh Lake Drainage District because appellants claim that interest on the borrowed money was included in the assessment of benefits on this district. We find it unnecessary to decide whether interest on the borrowed money was included in the assessment of benefits of this district, because there are other and sufficient reasons for rejecting appellants' fifth contention. The chancellor, in his written opinion previously referred to, rejected this fifth contention of the appellants in language so clear that we quote and adopt it as our own:

"Counsel for the landowners contend that the above act (Act 285 of 1941) constitutes a good ground for a bill of review for the reason that it was a matter arising subsequent to the last decree in this case; but, on the other hand, counsel for the bank contend that after the decision had been rendered by the Supreme Court in the case of *Kersh Lake Drainage District* v. *Johnson,* 203 Ark. 315, 157 S. W. 2d 39, this very act was specifically brought to the attention of the appellate court in the petition filed by the landowners for rehearing; that it was ignored by the Supreme Court in the denial of the petition for rehearing and it must be presumed now to be *res judicata.*

"It is undisputed that this very Act 285 was brought to the attention of the Supreme Court for the first time after its decision in 203 Ark., and it must be presumed that the Supreme Court considered it when denying the

petition for rehearing. Whether or not the denial of the petition for rehearing adjudicated the application of this particular act I do not pass upon for the reason that in the court's opinion the act is not applicable because it is prospective in purpose and not retroactive. No citations or authorities are needed to support the well known rule of law that all acts will be construed as prospective, rather than retroactive."

We furthermore point out that the certificates of indebtedness were issued by the district in 1919, and some of them still remain unpaid. The 1919 Act allowed interest. The 1941 Act could not defeat the interest while obligations were outstanding based on the collectibility of the interest. The Legislature in 1941 could not pass an act that impaired the obligation of the contract existing when the certificates were issued. In *Broadway-Main Street Bridge District* v. *Mortgage Loan & Insurance Agency*, 195 Ark. 390, 112 S. W. 2d 648, we said: "Interest of bondholders in assessments could not be impaired without the consent of all of them." To the extent that the collection of interest on the benefits is necessary to pay the outstanding indebtedness of the district, the 1941 Act could have no application.

In conclusion, we mention that the appellants presented other contentions in addition to the five listed and discussed. We forego a discussion of the other contentions; but each has been considered and found to be without controlling merit. It follows that the decrees of the chancery court in these causes are in all things affirmed.