TUCKER *v.* STEWART.

4-7781                    192 S. W. 2d 766

Substituted opinion delivered March 4, 1946.

*Jay M. Rowland,* for appellant.

*Murphy & Wood,* for appellee.

McFADDIN, J. This is the second appeal in this case. See *Stewart* v. *Tucker,* 208 Ark. 612, 188 S. W. 2d 125.

In the first appeal we awarded Mrs. Stewart the refrigerator, the bedroom suite in the front room of the house, and the title to the real estate; but all of the same:
". . . subject, first, to a lien on the real estate in favor of appellees for the reasonable value of the improvements made on said property by appellees, plus the amount of all taxes on said property paid by appellees, less the reasonable value of the rent of said property during the time appellees have been in possession thereof, the value of said improvements, and amount of said taxes and rent to be determined from testimony already taken and such additional testimony as the parties may see fit to offer, and subject, second, to the right of the executor or administrator of the estate of Cordelia Wilson Tucker, deceased, to sell same, or such portion thereof as may be necessary, in the manner provided by law, for the payment of probated claims against her estate."

On remand the chancery court heard additional testimony and rendered a decree on June 27, 1945, awarding the real estate and refrigerator and bedroom suite, as directed, and also: (a) fixing the value of the improvements and taxes at $458.12 in favor of the Tuckers; (b) charging the Tuckers with rent at $20 per month from October 1, 1942, (date of death of Cordelia Wilson Tucker) to date of the decree below (June 27, 1945), totaling $696.50; and (c) charging the Tuckers with future rents

at $25 per month from the date of the said decree until possession be delivered to Mrs. Stewart. There was no proof of any debts against the estate of Cordelia Wilson Tucker. The Tuckers have appealed from this decree, and Mrs. Stewart has cross-appealed. We dispose of the issues as follows:

I. *Mrs. Stewart's cross-appeal* is because of her contention that the Tuckers are not entitled to recover anything for any improvements. The answer to that contention is "law of the case." In the first appeal we held that the Tuckers were entitled to recover for improvements: and that opinion has become final. It is too late on remand and second appeal to attempt to re-try an issue which was definitely settled in the first appeal. In *Holthoff* v. *State Bank & Trust Company,* 208 Ark. 307, 186 S. W. 2d 162, we said:

"The doctrine of 'law of the case' is stated in 3 Am. Juris. 541: 'that a court of review is precluded from agitating questions which were propounded, considered, and decided on previous review.' "

That is the exact situation here: we held on the first appeal—as we have quoted above—that the Tuckers were entitled to recover for improvements. Mrs. Stewart is precluded from agitating that question on this second appeal. So we decide against the cross-appeal of Mrs. Stewart; and the remainder of this opinion relates to the issues on the direct appeal of the Tuckers.

II. *Identity of the refrigerator.* The same answer— law of the case—is given to the Tuckers' contention about the refrigerator. On the first appeal we awarded the refrigerator to Mrs. Stewart. Appellant claims that the refrigerator was not a Frigidaire, but was a Servel Electrolux. The proof shows that Mrs. Cordelia Wilson Tucker owned only one refrigerator at the time of making her will on February 14, 1942. She bequeathed this refrigerator to Mrs. Stewart. On the first appeal no question was raised as to the trade name of the refrigerator, and we awarded it to Mrs. Stewart. It is too late on the second trial to seek to nullify the former decree by show-

ing the trade name of the refrigerator. By whatever name, it is still a refrigerator: and the ownership was settled on the first appeal.

III. *Money paid by Frank H. Tucker* for deed. The same answer—law of the case—is given to this contention now made by the Tuckers on this appeal. We held on the first appeal, as regards the money paid by Frank H. Tucker after the death of Mrs. Cordelia Wilson Tucker:

". . . and the payment made after her death was made by him as a volunteer—since upon the death of his wife testate he had no interest, by reason of his relationship with her, in her property. Sec. 4422 of Pope's Digest of the laws of Arkansas, as amended by Act 313 of the General Assembly of Arkansas, approved March 15, 1939, and by Act 69 of the General Assembly of 1943, approved February 19, 1943. A stranger to a title acquires no lien by way of subrogation, in making purchase-money payments. *Nichol* v. *Dunn,* 25 Ark. 129; *Turley* v. *Gorman,* 133 Ark. 473, 202 S. W. 822."

IV. *Value of the improvements.* The lower court allowed the Tuckers $458.12 for improvements and for taxes for 1942 and 1943. The tax items were $48.12, which leaves $410 allowed for improvements. This allowance is exactly what Garnett Tucker showed by itemized statement in the first trial. On the trial of June 27, 1945, Garnett Tucker claimed $1,350 as the amount he paid for improvements to the property. But his latest testimony was not substantiated, and was in conflict with his own former testimony. At the trial of June 27, 1945, he refused to file bills or to furnish any itemized statements; and merely contented himself with estimates and guesses as to the amount expended. When asked how much he had paid each of three artisans, he said:

"A. I wouldn't have any way of knowing exactly. At that time they charged me $1.50 an hour. Q. Do you know how much it cost you? A. Counting the materials and all, I imagine it all ran around twelve or thirteen hundred dollars."

This excerpt is typical of the indefinite nature of Garnett Tucker's testimony, and certainly would not

justify us in reversing the chancery court, which accepted his itemized statement as given at the first trial over his estimates and guesses as given at the second trial. We leave undisturbed the allowance of $410 as the value of the improvements. In fixing the value of improvements, it is not a question solely of the amount expended. For the correct rule, see *Greer* v. *Vaughan,* 96 Ark. 524, 132 S. W. 456; and *McDonald* v. *Rankin,* 92 Ark. 173, 122 S. W. 88. The chancery court allowed $48.12 as taxes for 1942 and 1943. There is no proof of any other payments by appellants, so we leave undisturbed the figure of $458.12 allowed the Tuckers for improvements and taxes.

V. *Rents.* The chancery court charged the Tuckers with rent at the rate of $20 per month from the date of the death of Cordelia Wilson Tucker (August 1, 1942) to the date of the trial below; and this totaled $696.50. Complaint is made about the time and also the rate; but the testimony sustains the chancery court. Fred H. Tucker lived in the house from the date of the death of Mrs. Cordelia Wilson Tucker until his own death on October 6, 1942. Then Garnett Tucker began occupying the house. The latter testified:

"Q. When did you take possession of this house we are talking about, Mr. Tucker? A. About four or five days after my father passed away in October. . . . Q. When did you move into the house? A. I took out that furniture and had it (the house) all fixed on that one side, and I moved in there about a month after my father passed away. Then I would take a room and do each separately. Q. You occupied part of the house at the time? When did you get the whole thing ready to occupy? A. About two years ago. Q. About a year after he died? A. Yes, it took me that long. . . ."

Probably because of the time spent in repairing, the chancery court reduced the monthly rental to $20 up to the time of the trial. The testimony of a disinterested witness fixed the value at that rate during that period of time. We affirm the chancery court on the rental question.

*Conclusion.* The decree of the chancery court is affirmed on direct appeal and on cross-appeal, and the costs of this court are adjudged against the present appellants.