

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
*ATTORNEY GENERAL*

Hon. Woodard Bass
County Attorney
Wichita County
Wichita Falls, Texas

Dear Sir:   Opinion No. O-6982
       Re: Construction of Sec. 6,
         Article 1, Senate Bill 167,
         49th Legislature, with refer-
         ence to late filings of transfer
         applications with State Depart-
         ment of Education

   Your request for opinion has been received and care-
fully considered by this department. We quote from your re-
quest as follows:

   "The Fair View Independent School District
of this county transferred their 96 scholastics
to the Burkburnett Independence School District
(a State Aid School) on July 24, 1945, which
transfers were received and accepted by the County
Superintendent at that time and without any being
protested to the County Board. Through error
these transfers were not transmitted to the State
Department of Education until Nov. 11th, 1945.

   "S. B. 167 of the last legislature provides,
Art. I, Sec. 6, that such applications must be
filed with the State Department not later than
November 1st.

   "Is the receipt and acceptance of such
transfers by the County Superintendent prior to
November 1st a sufficient compliance to secure
State Aid or is a strict compliance, e.g. filing
with the State department by that date necessary?"

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Woodard Bass - Page 2

Article 2696, Vernon's Annotated Texas Civil Statutes, provides as follows:

"Any child lawfully enrolled in any district or independent district, may by order of the county superintendent, be transferred to the enrollment of any other district or independent district in the same county upon a written application of the parent or guardian or person having lawful control of such child, filed with the county superintendent; provided that any district or independent district being dissatisfied with any transfer made by the county superintendent may appeal from such action to the county board of trustees of said county who shall have the right to annul and cancel the transfer allowed by the county superintendent.

"The applicant shall state in said application that it is his bona fide intention to send said child to the school to which the transfer is asked.

"Upon the certification of the transfer of any child, from one district to another district, by the county superintendent of the county in which the child resides at the time of the transfer, the State Department of Education shall authorize the State Treasurer to pay over directly the per capita apportionment, in independent districts of five hundred (500) or more scholastic population, to the district to which such child is transferred; and in all other districts, to county superintendents, to be paid by him to the respective districts to which such children are transferred; provided, no transfer shall be made after August 1st. Acts 1905, p. 263; Acts 1935, 44th Leg. p. 488, ch. 201, §1."

Section 6, Article I, Senate Bill 167, 49th Legislature of Texas, reads as follows:

"No adjustments of transfers or census changes made after November 1st of the current school year shall be recognized in making grants of any type of aid under the provisions of this Act."

Hon. Woodard Bass - Page 3

There can be no doubt but what Section 6, Article I, supra, is a mandatory statute and one highly penal in nature. It clearly establishes a "deadline time" in which "adjustments of transfers or census changes" must be made. See Opinion No. 0-6953 of this department, which dealt with a fact situation wherein an independent school district rendered a scholastic roll to the county superintendent; the census taker having by error dated two birth dates a year later than the true dates were; the county superintendent struck off the names of the two children whose birth dates were improperly dated; the roll was sent in to the State Superintendent prior to November 1st; the error was later discovered and the county superintendent after November 1st made a change and sent in a corrected roll to the State Superintendent. Upon said fact situation it was held in Opinion No. 0-6953 that the corrected and changed scholastic roll was filed too late under Article I, Section 6, supra. We enclose herewith a copy of said opinion.

We think Opinion No. 0-6953 is correct and re-affirm same, however, for the reasons hereinafter pointed out, it is our opinion that neither opinion No. 0-6953 nor Section 6 of Article I, supra, have any application to the fact situation about which you inquire.

The facts stated by you reveal merely that transfers of ninety six scholastics were received and accepted by the county superintendent prior to August 1, 1945 (on July 24, 1945) and were not protested to the County Board, and said ninety six transfers were not transmitted to the State Department of Education until November 11, 1945. There was no change, correction or adjustment of said transfers made in any way; ninety six scholastics were transferred and no change, correction or modification or adjustment of the number of transfers was sought by the school. It is our view that in such situation there is not involved any "adjustments of transfers" as contemplated by Section 6 of Article I, supra.

Webster's New International Dictionary, Second Edition, unabridged, in defining the term "adjustment" states as follows:

1. "Act or process of adjusting, or state of being adjusted; specif., the bringing of a thing or things into proper or exact position or con-

Hon. Woodard Bass - Page 4

dition; arrangement; settlement; as, adjustment of the calendar; an amicable adjustment.

"...

"3. Bookkeeping. An entry or entries to correct or modify accounts, esp. entries made at the end of a period to show the true condition at that time.

"Syn. Suiting, fitting, arrangement, regulation, settlement, adaptation, disposition, rectification."

The distinction between an "adjustment" of assessments and a "re-assessment" is that an adjustment is a correction of inequalities in the original assessment of the various lands, while a "re-assessment" is a new determination of the benefits. Broadway Main Street Bridge District v. Mortgage Loan & Insurance Agency, 112 S. W. (2) 648, 649, 195 Ark. 390. Words & Phrases, Vol. 2, pp. 424,425.

Having concluded that there is no "adjustment of transfers" involved in your fact situation, it is our opinion that Section 6 of Article I, supra, is no bar to the right of Burkburnett Independent School District to receive State aid for the scholastic transfers inquired about.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By          Wm. J. Fanning
                 Assistant

WJF:BT

APPROVED 7 1946