THE AUGUSTA CORP., A DIVISION OF GRINNELL CORP. *v.* WOODRUFF ELECTRIC COOPERATIVE CORP.

5-5902                                    480 S.W. 2d 952

Opinion delivered June 5, 1972

*Pollard, Bethune and Cavaneau,* for appellant.

*John D. Eldridge,* for appellee.

CARLETON HARRIS, Chief Justice. The question in this litigation is whether a certain provision in a contract is ambiguous. On May 23, 1962, Woodruff Electric Co-operative Corporation, appellee herein, and Augusta Corporation, appellant herein, entered into an agreement for electric service. The purpose of the agreement was to supply electricity to be used by the Augusta Corporation for the purpose of melting metal at its manufacturing plant. The contract contained a rate schedule with adjustment rider which set forth the prices for electrical energy furnished thereunder. The basic net monthly rate under the rate schedule was as follows:

"$6.50 for the first 2 KW or less of Demand
$3.10 per KW for the next 8 KW of Demand
$1.55 per KW for the next 40 KW of Demand
$1.25 per KW for all additional KW of Demand
2.5c per KWH for the first 800 KWH
1.6c per KWH for the next 3,200 KWH
0.8c per KWH for the next 11,000 KWH
0.6c per KWH for all additional KWH
MINIMUM:
The Demand Charge for the current month, but not less than $1.25 per KW of the highest Demand established during the 12 months ending with the current month."

The adjustment rider reads as follows:

"ADJUSTMENT RIDER
Load Factor: Company will make allowances and adjustments in the monthly billings rendered to customer on the basis of monthly load factor to wit:
  a. All billings will be adjusted to 1.2c per KWH for the period of this Contract, except

b. In event Customer will operate the plant at a 40% or better load factor, then all billings will be adjusted to 1.0c per KWH, for such period so operated.

c. Load factor is determined by number of hours in a month times actual registered KW demand, divided into number of KWH used."

In January, 1968, a controversy arose between the parties regarding proper interpretation of the rate schedule and the adjustment rider. Appellant refused to pay the bills submitted by Woodruff, but paid according to its own interpretation of the contract. Thereafter, Woodruff Electric instituted suit in the Woodruff County Circuit Court. After hearing some oral evidence offered by Woodruff, the court announced that it was deciding the litigation on the basis of the contract itself, and that such contract was not ambiguous. Upon this announcement, appellant refrained from offering proof. The court held for Woodruff, and from the judgment so entered, Augusta Corporation brings this appeal. For reversal, it is asserted that the trial court erred in holding that the contract rate provisions clearly and unambiguously provide for a minimum charge of one cent per kilowatt hour, and in failing to consider evidence extrinsic to the contract.

At issue is the meaning and effect of the adjustment rider. The cooperative takes the position, which was adopted by the trial court, that the adjustment rider provides for a maximum charge (1.2) per KWH for months when the load factor is less than 40% and that it provides for a minimum charge (1.0) per KWH when the load factor exceeds 40%. Appellant agrees that the rider provides a maximum of 1.2 per KWH for months where the load factor is not 40%, but contends that the rider provides a second maximum charge (1.0) for months when the load factor exceeds 40%. In other words, Augusta Corporation contends that provisions in the rider favor it in each instance.

A discussion of the case in conference made it clear that the provisions are ambiguous since various views

were expressed, and we so hold. If appellee is correct, it is difficult to see why a rate schedule is set out at all, since the provisions of that schedule (heretofore set out) would be superseded by the adjustment rider, and all charges would be either 1.2 per KWH or 1.0 per KWH, depending on the load factor. The other rates would never be used. Actually, as far as charges per KWH are concerned, appellee agrees that this is correct.[1]

On the other hand, when the adjustment rider alone is read, it can be interpreted just as easily under the view of appellee. It will be noted that the language in the rider commences "Company will make allowances and adjustments in the monthly billings rendered to customer on the basis of monthly load factor***". Appellee states in its brief:

"The appellant seems to be contending that 'adjustment,' as used in the rider, means only a reduction, i.e., to 1.2c per KWH if the load factor is less than 40% and to 1c per KWH if the load factor is more than 40% and if the rates as set forth in the net monthly rates produce a figure between 1.0c and 1.2c. It argues that if the billing, applying the net rates, results in a figure of less than 1c per KWH it could never be adjusted upward to 1c. In other words, that the adjustment rider can only be applied to benefit the customer and never as a protection to the utility. It is submitted that this is a strained, unnatural and inequitable construction to put upon this language and is not justified by the plain meaning of the words. It is significant that the Appellant never quotes the fact that the Company will make not only adjustments but 'allowances' in connection with the monthly billings to consumer on the basis of its monthly load factor. The word 'allowances' obviously refers to the right of the customer to have a reduction either to 1.2c per KWH or 1c per KWH, depending upon its monthly load factor. That is the

---

[1]The contract contains other provisions, such as availability, application, type of service, time for payment, and the period covered by the contract.

very meaning of the word 'allowance'. G & C Merriam Webster Unabridged Dictionary gives the following pertinent definitions of the noun 'Allowance':

'Act of allowing, granting, conceding or admitting; a share or portion allotted or granted; a sum granted as reimbursement or bounty; abatement.'

In none of the definitions of the word 'allowance' is there any aspect of an increase."

Since, under appellant's view, hereafter set out, it does not appear that the word "allowance" was essential, it may be that there is merit in the above argument advanced by appellee; i.e., the word was used as a matter of setting forth the rights of appellant, while the word "adjustment" was used to set forth the rights of appellee. However, this is not entirely clear.

It is then pointed out that the word "adjustment" can mean either a reduction or an increase and this is correct. In fact, in *Broadway-Main Street Bridge District* v. *Mortgage Loan and Insurance Agency, Inc.*, 195 Ark. 390, 112 S.W. 2d 648, this court pointed out, in referring to an annual adjustment of assessments of benefits to be made by assessors that the total amount of the assessment could be increased or diminished.

Appellant's argument is presented in its brief as follows:

"The phrase at the heart of this question of interpretation is 'will be adjusted to'. The term 'adjustment' admittedly can mean change in either direction, but one of the definitions given it by Webster, New World Dictionary of the American Language (2nd College Ed. 1970) is 'a lowering of price, as of damaged or soiled goods.'

It is essential to note that the phrase 'will be adjusted to' is used for both the situation where the load factor does not equal 40% (paragraph a. of the

rider) and that where it does (paragraph b. of the rider). Where a certain term is used twice in the same writing it will ordinarily be deemed to have been used in the same sense each time. 17 Am. Jur. 2d, Contracts § 247 (1964). If this phrase sets a maximum as held by the court below, of 1.2c per KWH when load factor is less than 40%, should it not then set a maximum of 1.0c when the load factor exceeds 40%?"

Appellant further argues that Woodruff Electric is left with the choice or arguing an inconsistent interpretation of the discussed rider or arguing for a construction which would completely nullify the rate schedule, a part of the contract.

Frankly, it appears that either interpretation could be reached, and we have held that where a contract is susceptible of two different interpretations, it is ambiguous, and where two such interpretations may be urged with plausibility, the ambiguity is apparent. *Lutterloh* v. *Patterson*, 211 Ark. 814, 202 S.W. 2d 767. This finding means that parol evidence is admissible. We have said, "Evidence which tends to show the intention of the parties and does not contradict or vary the terms of the written instrument is admissible for the purpose of showing the real meaning of the words used in the instrument and the intention of the parties". *Sternberg* v. *Snow King Baking Powder Company, Inc.*, 186 Ark. 1161, 57 S.W. 2d 1057.

In accordance with what has been said, the judgment is reversed, and the cause remanded to the Woodruff County Circuit Court.

It is so ordered.